County Court, Onondaga County, October, 1904. Reported. 45 Misc. 141.

Matter of the Application for an Order Directing the Resubmission of the Local Option Questions to the Electors of the Town of La Fayette.

Submission of local option questions—Resubmission refused although the notice of the original submission was not published—Laches.

Under the provisions of section 16 of the Liquor Tax Law providing for the submission of local option questions, the failure of the town clerk to publish the required notice in a newspaper published in the county, is not necessarily a jurisdictional defect in the proceeding.

In such a case, the court may exercise a certain discretion in determining whether an application to resubmit the matter at a special town meeting duly called for that purpose, shall be granted.

Under what circumstances an application for a resubmission of the matter will be denied because of laches considered.

PROCEEDINGS under the Liquor Tax Law for an order directing the resubmission of the local option questions to the electors of the town of La Fayette.

*Hiscock, Doheny, Williams & Cowie (James W. Knapp,* of counsel), for petitioner.

*William E. Schenck,* for Patrick W. Cullinan, State Commissioner of Excise.

Ross, J. Section 16 of the Liquor Tax Law provides for the submission at each biennial town meeting held in any town in the State of four questions which enables the voters of the town to determine whether they desire liquor to be sold in the town. They are enabled to approve of any kind of traffic or reject any or all. Question IV relates to the sale by hotel-keepers, and this is the question in which the petitioners are interested.

Certain formal requirements are necessary as a preliminary to such submission. Ten per cent. of the voters at the next preceding election must request such submission, which request must be in writing and acknowledged, and must be filed with the town clerk not less than twenty days before such town meeting. The town clerk must file in the office of the county clerk, within five days thereafter, a certified copy of such petition. He must also

at least ten days before such holding of the town meeting cause to be printed and posted in at least four public places in such town, notice of the fact that the local option questions will be voted on at such town meeting or general election. "Said notice shall also be published at least·five days before the vote is taken, once in one newspaper published in the county in which such town is situate, which shall be in a newspaper published in the town, if there be one." Each officer charged by law with the duty of preparing the official ballots for such town meeting or election shall prepare the same, and upon the face shall be printed in full the questions to be submitted. At the last general election held in the town of La Fayette on November 6, 1903, the local option questions were submitted to the electors of that town. The election was held and 159 votes were cast in favor of the fourth question relative to the sale of liquor by hotel-keepers and an equal number against. Such sale not being authorized by a majority of votes cast was lost.

Section 16, in question, provides: "If for any reason except the failure to file any petition therefor, the four propositions provided to be submitted herein to the electors of a town shall not have been properly submitted at such biennial town meeting, such propositions shall be submitted at a special town meeting duly called. But a special town meeting shall only be called upon filing with the clerk the petition aforesaid and an order of the Supreme or County Court, or a Justice or Judge thereof, respec· tively, which may be granted upon eight days' notice to the State Commissioner of Excise, sufficient reason being shown therefor."

And it is for such order that this application is made. The ground therefor is that the town clerk omitted to publish the required notice in a newspaper published in the county. The language of the statute relative to obtaining an order of this character assumes some discretion may be exercised. It requires such an order from a court or judge, which court or judge may grant such order upon sufficient reason. In other words, every irregularity in the submission of such questions is not jurisdictional. This was held by Mr. Justice Kellogg in *Matter of O'Hara*, 40 Misc. Rep. 355, in which the irregularity complained of was precisely the same as in this case. I quote from the opinion of the learned judge on p. 358: "It does not seem that an elec· tion shall be declared void because a ministerial officer has neglected·to perform a duty as to publishing a·notice, when it is

beyond question that the failure to perform that duty has not prejudiced any one or any cause."

The facts in the O'Hara case were much stronger in favor of the exercise of such discretion than in this case. Three hundred and forty-eight votes was the largest number cast for any officer and the largest number cast upon any excise proposition was 347, showing that every elector except one who voted upon any question voted upon some of these propositions. In this case the largest number of votes cast for any officer was 402. The affidavits presented in the O'Hara case in opposition to the resubmission also showed a most thorough agitation and discussion of the questions prior to the election.

The case under consideration also presents a feature which did not exist in the O'Hara case. The affidavit of William J. Rowe, who states that he was qualified to vote at the general election in question, states that he did not know of the submission of the question of local option and did not vote on said question; that if he had known of the submission of said question, he would have voted in favor of it. Such vote would have changed the result. In the case under consideration the commissioner of excise, through his attorney, presents the affidavits of Charles A. Gillette, N. M. Holmes and W. C. Newell.

Dr. Charles A. Gillette resides in the village of La Fayette, and has for over eighteen years, and has a general store for the sale of merchandise, which store adjoins one of the hotels seeking a license. He says that prior to the town meeting in question, the temperance people of the town agitated the subject of local option, and owing to the conditions existing in the neighborhood, due to the manner in which the above-mentioned hotel had been conducted, there was plenty of talk about the village and in his store about the subject. That he does not belong to any temperance society, nor take any part in the campaign, but that the agitation was general in the neighborhood, not only amongst the people residing in the village, but among the townsmen as well. That if the hotel had a license and was properly conducted it would be beneficial to him.

Mr. Holmes conducts a general store in the village of Cardiff in the town of La Fayette, where he is also postmaster. He states that the matter was thoroughly agitated; that there was a full vote in said town, and that while he was strongly opposed to the continuance of the liquor business "Because it had not

been conducted in a respectable manner " but if a hotel could be conducted in an orderly manner, it would benefit the village, and I should favor a resubmission of the local option questions if the hotel in this village would be conducted in as orderly a manner as it was conducted from about the time of the last town meeting until the first of May.

Mr. Newell states that he was re-elected supervisor at the election in question. " That previous to the said election a personal canvass was made among the electors of said town, and that every voter was interviewed by one or the other of the candidates for office, and that it was then known that the local option questions were to be voted upon again, and to deponent's knowledge the subject was widely discussed; there being a bitter controversy between those objecting to the manner in which the hotel proprietor at Cardiff had conducted his business, and those favoring a continuance of traffic in liquor by the hotel keepers only, and on election day both those favoring and those opposing, had workers to get out the local option vote." That he has heard of no one who did not know that the local option questions were to be submitted, and that he never before heard of any reason being urged as a ground for a new town meeting to vote upon said local option questions.

It also appears by the affidavit of Mr. James McManus, submitted by the commissioner of excise, that he was town clerk from 1898 until 1902, and at the town meetings in 1899 and 1901, when the local option questions were submitted, that no notices of such submission were published in any newspaper.

I now return to a consideration of the affidavit presented by the petitioners of Mr. William J. Rowe. It was stated upon the argument, and not denied, that Mr. Rowe lives in the village of La Fayette, near one of the polling places. This affidavit was not presented with the moving papers. An adjournment was taken of this matter to enable the commissioner of excise to file affidavits in reply to the petition, and upon the adjourned day the affidavit of Mr. Rowe was presented. The affidavit is typewritten except the name of the affiant which is written in a blank space left for that purpose. The affidavit is signed and the date and name of the officer taking the same are in writing. Of course the affidavit bears the signature of the affiant, and he is responsible for its contents, but as bearing upon its value, it apparently was prepared before the name of the affiant was known and before it

was executed. If typewritten at the request of Mr. Rowe and in his presence, there would be no reason for not inserting his name in typewriting, and this is also true if it was transcribed pursuant to his direction and afterward presented to him. In other words, the affidavit was evidently prepared to be sworn to by some one, or any one who could make an affidavit to the facts contained therein. The affidavit is silent as to the circumstances under which it was made, the care with which it was read to or explained to the affiant, and the other circumstances which tend to show that an affidavit is made to conform to the affiant's knowledge of the facts. Mr. Rowe does not state that he did not vote at the election in question. If he voted, the ballots containing the proposition in question must have been handed to him by the ballot clerk. Election Law, § 103, subd. 2. See Liquor Tax Law, § 16.

No public question, except perhaps school controversies, is more likely to excite general public interest in the locality affected than a controversy upon local option, and if a man, who resided in a village near a polling place, did not learn, during the agitation disclosed by the affidavits, of the submission of the local option questions to the voters of his town, it is a violent presumption that he would have learned of it by the formal publication of a local notice published once in some paper in the county of Onondaga. (It was conceded that no newspaper is published in the town of La Fayette.) The poll workers for and against these propositions lacked the usual energy displayed, if they allowed a voter in close proximity to a polling place to remain unenlightened as to the questions to be submitted. This is specially true in a rural community where every person is known.

I see no good and sufficient reason for distinguishing this case from the O'Hara case.

I think also that this application should be denied on the ground of laches.

The practical effect of ordering a resubmission of this question would be to enable the hotel-keepers in the town of Lafayette to sell liquor regardless of the result of the vote at such resubmission, from that time until the first of May next, at which time the result of such election takes effect. In other words, by delaying this application for nearly a year, it enables the hotel-keepers to sell liquor from the day of election until May first, in violation of the wishes of the majority of the electors of the town. I think

that they should not be allowed to take advantage of their own neglect in applying for a resubmission in this manner. If they in good faith desired a resubmission of these questions in the absence of some good reason for delay, they should have taken steps to that end at such time as would have enabled the voters to pass upon it prior to the first of May last.

Motion for a resubmission denied.

Motion denied.